UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEN COFFIN,

          Petitioner,

                                  Case No. 1:12-CV-1196

v.

                                  Hon. Robert J. Jonker

ROBERT NAPEL,

          Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner, Ben Coffin, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

        Respondent summarized the criminal act which gave rise to petitioner's conviction:

        That night, Moriah Farrar was working the evening shift at Purk's Party Store. (1/30/08 Trial Tr. at 154-55.)  She was planning to close the store at midnight.  (*Id*. at 155.)  Farrar was acquainted with Coffin -- they had chatted at bars, and Farrar thought Coffin was "cute." (*Id*. at 158-59.)  She also knew Coffin because Coffin had tried to sell her a camera, a jacket, and a helmet, to get money to buy Oxycontin.  (*Id*. at 159-60.)

        Twenty minutes before closing time, Coffin entered the party store and, on seeing Farrar, "muttered something like, '[N]ot you,'" and then told Farrar that he was there to rob her.  (1/30/08 Trial Tr. at 155-56 (quotation marks added).)  He was carrying a knife and wearing a black hooded sweatshirt, turned backwards, with the hood pulled up over his face, and holes cut out for his eyes.  (*Id*. at 156, 158.)  Farrar asked him if he was flipping serious," and Coffin "took a deep breath and" said, "[Y]es, I'm serious." (*Id*. at 156.)

        Coffin pushed Farrar behind the counter and told her, "[O]pen the drawer bitch." (1/30/08 Trial Tr. at 157.)  Farrar complied, took out two hundred-dollar bills and several twenty-dollar bills, and put them in a bag.  (*Id*. at 157, 164-65.)  She

started to close the drawer, but Coffin said, "[N]o, I want it all." (*Id*. at 157.)  Coffin then grabbed more money out of the drawer. (*Id*.)

As soon as Coffin left, Farrar called 9-1-1.  (1/30/08 Trial Tr. at 160.)  Ionia County Sheriff's Deputy Brian Thome responded to the call.  (*Id*. at 211.)  Farrar identified the robber as Coffin because she recognized his voice, the shape and color of his eyes, and the color of his hair (based on his eyebrows). (*Id*. at 160-61, 183-84, 216.)  She also could tell that the robber was acquainted with her based on his behavior upon entering the store: the fact that "[h]e walked in the door and he stopped and just like nodded shook [sic] his head like no, not you." (*Id*. at 162.)  That struck Farrar as odd, "[b]ecause if you're going to rob a store, why would you walk in the door and stop dead in your tracks unless you knew the person you were robbing." (*Id*.)

Respondent's Answer to amended petition (docket no. 47, PageID.305-306).

Petitioner was charged with armed robbery and tried before a jury.  On January 31, 2008, a jury found petitioner guilty of armed robbery, M.C.L. § 750.529.  *See People v. Coffin*, 2009 WL 2850700 at *1 (Mich. App.  Sept. 3, 2009); Sent. Trans. at pp. 208-09 (docket no. 19).  At the time petitioner committed the robbery, he was on probation for attempted larceny from a building. *People v. Coffin*, 2009 WL 2850700 at *1.  On April 22, 2008, the state court sentenced petitioner as a fourth habitual offender to 28 to 50 years in prison consecutive to any sentence he was serving. *Coffin*, 2009 WL 2850700 at *1; Sent. Trans. at p. 8 (docket no. 20).

Petitioner filed an appeal of right with the Michigan Court of Appeals, raising one issue:

Did the sentencing judge lack authority to make Mr. Coffin's sentence consecutive to  one he was serving for a probation violation?  Must the judgment be amended to make the sentences concurrent?

Petitioner's Brief (docket no. 29).  On September 3, 2009, the Michigan Court of Appeals remanded the case "with instructions that the trial court amend the judgment of sentence to reflect that [petitioner's] sentence for the instant conviction is to be served concurrently with that for the

2

previous conviction." *Coffin*, 2009 WL 2850700 at *1. Petitioner did not appeal this decision to the

Michigan Supreme Court. *See* Affidavit of Corbin R. Davis (docket no. 30).

       Petitioner filed a *pro se* motion for relief from judgment on October 25, 2010, raising

the following issues unrelated to the sentencing issue raised on his direct appeal (in his words):

a.     Trial counsel was ineffective, in violation of the Sixth Amendment, where he:

    (1)     operated under multiple conflicts of interest, including (a) simultaneously representing Mike Slusher, a potential co-defendant of Mr. Coffin, who, in exchange for a recommendation to the prosecutor to have Mr. Slusher's bond reduced, implicated Defendant in the offense, (b) representing the victim of the robbery, Moriah Farrar, and (c) being owed $2,000 by Defendant, which adversely affected counsel's performance in that (a) counsel represented Michael Slusher's interest in implicating Defendant, rather than Defendant's interest in being exculpated, (b) counsel failed to vigorously cross-examine Moriah Farrer (eg, failed to question her at trial regarding her unreciprocated attraction to Defendant, which would have shown a motive to implicate Defendant in the crime, even though counsel had questioned her about this at the preliminary examination), and (c) counsel explicitly told Defendant that counsel was first and foremost concerned about Defendant's debt to him and implied that implied that if it was not repaid, his performance would suffer, and it did suffer, as evidenced by all the other attorney errors listed in this motion;

    (2)     failed to investigate an alibi defense based on (a) the police report of Deputy Joseph C. White (10/22/07) which said that John Brown placed [petitioner] with him for the entire hour during which the robbery occurred and (b) information provided by Defendant that Defendant had been on the phone with his sister during the time of the robbery;

(3)     failed to investigate and obtain critical exculpatory evidence, including records of Defendant's student loan (showing the source of the cash found on his person), records of the phone call with his sister at the time of the offense (corroborating her testimony), and rent records showing that Defendant's rent was due that week (showing why he had the cash on his person);

(4)     failed to investigate the alibis of two other people suspected by police of committing the robbery, who testified against Defendant and who said they were at a roller skating rink and later at their mother's house when the robbery occurred;

(5)     failed to prepare for trial, including failing to consult with Defendant until 72 hours before trial (which prevented Defendant from pursuing several pretrial motions and resulted in the Court denying a motion to adjourn to prepare an alibi defense);

(6)     failed to move to suppress (a) the money found in Defendant's pocket as illegally seized and (b) Defendant's post-arrest, un-Mirandized statements to the police;

(7)     failed to point out several inadequacies in the People's case (eg, the money found on Defendant was not marked, as the victim testified that the money stolen would have been), and;

(8)     failed to object to the prosecutor's misconduct, to leading questions, to hearsay, to the mention of Defendant's invocation of his right to remain silent, to his introduction of evidence that Defendant had previously been convicted of other crimes or to file a pretrial motion to exclude such evidence;

b.     The prosecutor committed misconduct, in violation of the Fifth Amendment where he:

> (1)   vouched for witnesses and evidence by saying "We know he committed that armed robbery" during opening statements;
>
> (2)   mischaracterized the reasonable doubt standard as requiring the jury to find only "does everything everyone [is] saying basically kind of match? Does it basically kind of jive together?" and by giving a "Lotto" example that shifted the burden of proof;
>
> (3)   repeatedly -- after being warned by the judge -- called attention to [petitioner's] exercise of his right to remain silent;
>
> (4)   made comments in closing rebuttal that denigrated defense counsel by saying he lied, that mischaracterized the evidence, and that construed Defendant's exercise of his rights as evidence of guilt.

c.   The trial court violated Defendant's Fifth Amendment right to a fair trial by denying adjournment where the need for adjournment was defense counsel's failure to consult with Defendant, failure to investigate an alibi defense, and failure to investigate and procure critical exculpatory evidence, where these failures prejudiced Defendant as set forth above, and where the trial court wrongly attributed counsel's failures to Defendant by saying the reason counsel had not visited Defendant earlier was that Defendant requested to go to the department of corrections, rather than stay at the jail, which caused counsel to be unable to visit him, bu Defendant originally requested to go to the DOC because the DOC has law libraries to prepare for histrial, while the county jail did not, and there was no reason that counsel could not have visited Defendant at the DOC; the trial court's denial of adjournment thus violated Defendant's right to a fair trial because it penalized him for seeking to prepare a defense through the DOC's law libraries and because it actually prejudiced his defense by preventing counsel from investigating and properly preparing the case.

d.   The trial court violated Defendant's Fifth Amendment right to a fair trial by denying Defendant's motion for substitution of counsel based on a conflict of interest.

e.   The trial court violated Defendant's Fifth Amendment right to a fair trial by repeatedly instructing the jurors that they could not use their own experiences or expertise.

f.   Appellate counsel was ineffective for failing to raise the issues set forth above, in violation of the Sixth Amendment, where appellate counsel only raised one issue, that Defendant's 16 to 24 month sentence was not run concurrent to his 28-50 year sentence, a relatively inconsequential issue, compared to the issues that could have been raised, which were obvious from the record and had a reasonable probability of resulting in a new trial, rather than merely a 5% reduction in overall prison time.

*See* Motion (docket no. 23) (internal citations and emphasis omitted).

The trial court denied the motion in an order entered on November 4, 2010.  *See* Order (docket no. 26, pp.  1-2).  Petitioner filed a *pro se* motion for reconsideration on November 18, 2010.  *See* Motion for reconsideration (docket no. 22).  In this motion, petitioner objected to the trial court's determination that petitioner failed "to meet his burden of demonstrating actual prejudice from the alleged irregularities that support the claim for relief" and that appellate counsel's decision to pursue claims was appellate counsel's strategy. *Id.* at pp.  1-2.  On January 21, 2011, petitioner, through counsel, filed a motion to amend or supplement the pending motion for reconsideration. *See* Motion to amend or supplement (docket no. 24).  The amended motion argued the following:

I.   Defendant was denied his right to a fair and impartial trial when trial counsel did not file a motion to suppress identification testimony of the prosecution's primary witness and did not object to prosecutorial misconduct or to an erroneous jury instruction that had a substantial and injurious effect or influence on the jury's verdict.  U.S. Const. Am.'s V, VI, & XIV; Mich Cont 1963, Art 1 && 17, 20.

*Id.* at p. 6.  The trial court denied this motion after hearing testimony regarding ineffective assistance of appellate counsel.  *See* Motion Trans. (docket no. 21).

Petitioner filed a delayed application for leave to appeal the March 11, 2011 order to the Michigan Court of Appeals, which that Court denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Coffin*, No. 306350 (Mich. App. March 30, 2012) (docket no. 31, p.  1).  Petitioner then filed an application for leave to appeal to the

Michigan Supreme Court, which that Court denied on October 22, 2012. *People v. Coffin*, 493 Mich. 868, 821 N.W.2d 566 (2012).

Coffin filed a petition in this Court seeking habeas relief under 28 U.S.C. § 2254 on October 24, 2012. *See* Petition (docket no. 1).[1] On January 4, 2013, he filed an amended petition which raised six issues (in his words):

I.     Did the trial court abuse its discretion in failing to grant Petitioner's motion for relief of Judgement?

II.    Petitioner was denied the right to effective assistance of trial and appellate councel.

III.   Trial Courts abused its discretion in dening a continuance to prepare alibi defense.

IV.    Trial Courts violation of Defendant's Fifth and Sixth Amendment rights by denying motion for Substitution of Councel based on conflict of interest.

V.     Did the prosecutor commit numerous acts of misconduct in violation of the fifth amendment?

VI.    Was defendant denied the effective assistance of DEFEdefenes counsel for failing to subject the prosecutor's case to meaningful adversaral testing?

Amended Petition (docket no. 6, PageID.131-138).

The parties have engaged in considerable motion practice in this case. On May 22, 2013, petitioner moved to file a second amended petition. *See* Motion to amend. (docket no. 10, PageID.147). On July 19, 2013, respondent filed a motion for summary judgment and dismissal of this action on the basis that the petition was untimely. *See* Motion (docket no. 13, PageID.196). On

---

[1] Although docketed on October 31, 2012, the petition was deemed filed as of October 24, 2012. *See* Report and Recommendation (docket no. 41, PageID.264); Order (docket no. 44).

7

February 10, 2014, the Court denied petitioner's motion to amend. *See* Order Denying Motion (docket no. 40, PageID.259). On that same date, the Court entered a report recommending that respondent's motion for summary judgment be denied in part and granted in part. *See* Report and Recommendation (R&R) (docket no. 41, PageID.262). The Court approved and adopted the R&R on March 13, 2014, denying summary judgment as to Issues II, III, IV, V, and VI, but granting summary judgment as to Issue I. *See* Order Approving and Adopting R&R (docket no. 44, PageID.297).

On May 12, 2014, respondent filed his answer to the remaining issues: II, III, IV, V, and VI. *See* Response (docket no. 47, PageID.300). Petitioner did not file a reply to the response. Rather, on July 16, 2014, petitioner sought leave to file a third amended petition (referred to by petitioner as a second amended petition) along with a memorandum in support of the motion. *See* Motion (docket no. 49, PageID.379); Memorandum (docket no. 50, PageID.402). In this memorandum, petitioner, after having the opportunity to review respondent's answer, attempted to change the substance of his habeas claims by re-configuring the five remaining claims into four issues. *Id*. Petitioner also sought to stay the proceedings. *See* Motion (docket no. 49). The Court denied both motions, but stated, "the Court will view his memorandum to the extent that it relates to Issues II through IV in the amended petition or responds to arguments as set forth in respondent's answer." Order (docket no. 51, PageID.541). Petitioner filed another motion to stay proceedings on December 23, 2015, which the Court denied. Motion (docket no. 57); Order (docket no. 61).

## II.     Procedural default

## A.     Legal Standard

Based on this record, the doctrine of procedural default applies to all of petitioner's remaining claims except for that portion of Issue II alleging ineffective assistance of appellate counsel (IAAC).  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice."  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

Not every state procedural rule will warrant application of the procedural default doctrine**.**  Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," will support application of the doctrine.  *Ford v. Georgia*, 498 U.S. 411, 424 (1991).  MCR 6.508(D) is a "firmly established and regularly followed" procedural rule.  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir.  2000).

"For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default."  *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).  "If a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review."  *Baze v.  Parker*, 371 F.3d 310, 320 (6th Cir.  2004) (citing *Caldwell v.  Mississippi*, 472

U.S. 320, 327 (1985)).  If the state court "explicitly invokes a state procedural bar rule as a separate basis for decision," federal habeas review is procedurally defaulted even if the state court discusses the issues on the merits.  *Harris v. Reed*, 489 U.S. 255, 267 (1989).

Finally, for a claim to be procedurally defaulted, the state procedural rule must be "an independent and adequate state procedural ground." *Cty. Court of Ulster Cty. N.Y. v. Allen*, 442 U.S. 140, 148 (1979).  "A state procedural rule is an independent ground when it does not rely on federal law." *Wilson v. Mitchell*, 498 F.3d 491, 499 (6th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

Here, the trial court denied petitioner's claims for relief from judgment as to Issues II (as to the ineffective assistance of trial counsel claim only), III, IV, V, and VI because "[t]he allegations raised by the [petitioner] allege grounds for relief which could have been raised by a motion for new trial or on appeal from the conviction and sentence." Order (docket no. 26, pp. 1). The trial court further stated, "[i]n this case defendant has failed to meet his burden of demonstrating 'actual prejudice from the alleged irregularities that support the claim fo relief.'" *Id.*  This ruling, which is the last reasoned state court opinion explaining the rejection of petitioner's claims, relies on a independent and adequate state procedural ground that is the basis for the trial court's holding.[2] Accordingly, all of petitioner's claims with the exception of IAAC are procedurally defaulted.

---

[2] In *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010), the Sixth Circuit held that brief orders which cite only MCR6.508(D) - i.e., the type of orders entered by the Michigan Court of Appeals and the Michigan Supreme Court in this case - "are not explained orders invoking a procedural bar." "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Guilmette*, 624 F.3d at 291. Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.

### B.    Cause and Actual Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default *and* actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750 (emphasis added). "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.* Here, petitioner contends that his appellate counsel was ineffective for failing to raise seven additional topics on appeal. If successful, such a claim could serve as both an independent claim of error for IAAC and as cause to excuse the procedural default of Issues II, III, IV, V, and VI. However, for the reasons discussed in § IV.B., petitioner has not demonstrated cause to excuse his procedural default because his appellate counsel was not constitutionally ineffective. For this reason, it is unnecessary for the Court to address actual prejudice.

### C.    Fundamental Miscarriage of Justice

Petitioner's failure to demonstrate cause prevents federal habeas review of these issues unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner offers no such new evidence that he is actually innocent of the crime for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, petitioner's claim of ineffective assistance of trial counsel raised in Issue II, and all of the claims raised in Issues III, IV, V, and VI are procedurally barred and not subject to federal habeas review. The Court will now address petitioner's claim of IAAC.

## III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons*

*v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  In the present case, petitioner has exhausted his state remedies with respect to his claim for IAAC.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011).  The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*,  559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted).  This deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'"  *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.  Thus, "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

14

## IV.   Discussion

## A.   Legal Standard for IAAC

Petitioner contends that his appellate counsel provided ineffective assistance by failing to raise seven additional issues on appeal.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

First, the Court considers whether counsel's performance was deficient. The Supreme Court has held that there is no duty for appellate counsel to "raise every 'colorable' claim suggested by a client" and that doing so "would disserve the very goal of vigorous and effective advocacy." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review . . . A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id.* at 752-53. Strategic and tactical decisions regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "In the appellate context, 'To establish deficient performance, [petitioner] must demonstrate his appellate counsel made an objectively unreasonable decision by choosing to raise other issues instead of [the challenged issue], meaning that issue 'was clearly stronger than issues that counsel did present.' " *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir.2009)).

Second, the court determines whether counsel's deficient performance was prejudicial. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id*. The

appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

### B.      Petitioner's IAAC Claim

Petitioner contends that appellate counsel was ineffective because counsel failed to raise seven claims as requested by petitioner. *See* Amended Petition (docket no. 6, PageID.131-138). The trial court addressed this claim as both "good cause" to support his motion for relief from judgment and as a substantive claim. *See* Order (docket no. 26); Motion Trans. (docket no. 21). The trial court rejected this claim stating,

> In this case [petitioner] has failed to meet his burden of demonstrating "actual prejudice from the alleged irregularities that support the claim for relief." No such "reasonably likely chance of acquittal" existed in the instant case in spite of the alleged errors. There was ample evidence to convince the jury of [petitioner]'s guilt, including that an eye witness identification of the [petitioner] by the victim and compelling circumstantial evidence relating to the money and clothing implicating [petitioner]. The complained of errors, even if true, would not have changed the outcome in this case.
>
> * * *
>
> In this case [petitioner] has failed to overcome the presumption that his appellate counsel's decisions were anything but appellate strategy. *People v. Riley* (After remand), 468 Mich 135, 140 (2003). There is just no reason why [petitioner] and/or appellate counsel would not have raised the previously asserted and now asserted errors unless there was a deliberate decision not to pursue this avenue for relief.

Order (docket no. 26, pp. 1-2).

Following petitioner's motion for reconsideration, the trial court granted a hearing on the issue of ineffective assistance of appellate counsel. After hearing testimony from petitioner's trial and appellate counsel, the trial court confirmed its previous findings, stating:

> I am denying the [petitioner]'s motion for relief from judgment. I am not satisfied that [petitioner] has overcome the presumption of effective assistance of

17

counsel.  And, in fact, the Court contrarily finds that he did receive effective assistance of counsel, both on the appellate and trial court level.

I first make this determination based on the testimony essentially from Mr. Baker [petitioner's appellate attorney] and as it is otherwise supported by the record or via the testimony of Mr. Downes [petitioner's trial attorney].  Mr. Baker has extensive experience as an appellate attorney.  He is employed by the State Appellate Defender's Office, and as such by that, is not paid on the number of issues raised or is subject to the hourly rate that private counsel are.  So by that, it would not make sense and I do not believe that he in any way told the [petitioner] that he would only raise one or two issues because that's all he was being paid to do.  To the contrary, I accept Mr. Baker for his word that if there was arguable merit he would have raised the issue.  Now that is not to say but that other appellate counsel would have raised some of the issues that Mr. Baker did not.  There is even a legitimate argument that the cumulative raising of issues sometimes can be effective on appeal.  However, because Mr. Baker did not do so that does not mean that he was ineffective in his representation of [petitioner].  Mr. Baker did his due diligence.  He talked with the [petitioner].  He talked with trial counsel.  He read the file.  He did his research.  He even discussed the case with other appellate attorneys as to what issues could or should be raised.  It was then his determination that the issues objected here to today did not have arguable merit, and as such by that, it was his opinion as appellate counsel that the same would not be raised.

As pointed out, [petitioner] also had the opportunity to raise these issues.  He did not.  And I do note in commenting on that question that he did file a motion to dismiss and appoint substitute counsel at the trial court level on January 30, 2008.  That motion and pleading did contain substantial case law and factual averments.  I recognize, as Mr. Coffin has pointed out in a prior correspondence that he received assistance in doing so, and as such by that, may not have the same skills as would be represented in that motion.  But it still is something that the Court takes into consideration as to what abilities Mr. Coffin did or did not have or what resources were available to him.

He has also post conviction filed substantial and extensive pleadings, and as such by that, also defeats the argument that he could not have raised those issues himself at the appellate level, but that is really a non-issue.  I'm satisfied, based on the evidence here before the Court, that Mr. Baker did provide effective assistance of counsel.  And his review, again even though someone else may have disagreed, is not something that would affect the appellate court's in reviewing this case.

And in doing so, the Court is also considering the testimony of Mr. Downes and the record otherwise.  There have been a number of other issues that were raised this afternoon.  And upon this Court's consideration of those issues, I do not see

18

ineffective assistance of appellate counsel, or for that matter, ineffective assistance of trial counsel. . . .

With regards to the conflict of interest issue, I would concur with Mr. Bker that his determination was that this would not be an ineffective issue and would also not establish ineffective counsel. This was further supported by Mr. Downes' testimony that he did discuss this issue so far as the victim. And as indicated in the parties pleadings, there is an explanation for his representation. It is not something as such that would conflict with his representation of Mr. Coffin. And, in fact, further Mr. Downes did discuss this with Mr. Coffin, and as such by that, received his permission to proceed as his trial attorney.

With regards to Michael Slusher, I don't see that as being an issue. It's hard to tell as to what point Mr. Downes represented Mr. Slusher. Mr. Downes thought it was post representation of Mr. Coffin. But even if it were to assume that it was not, I'm not seeing any way that it impacted Mr. Downes' representation of Mr. Coffin or affected the trial, or otherwise affected his right to receive a fair trial or the verdict in this case. It certainly does not fall within the criteria advocated by Strickland and then the Michigan cases that followed as to justifying a new trial or other appellate relief.

With regards to the issue so far as preparation for trial, I am not seeing anything from what has been said here today via testimony or argument or through the file that indicates that Mr. Downes was not prepared for trial. Certainly, in retrospect there always can be, and I would be surprised if there was not, things that one would wish they had done otherwise or additional questions that could be asked or something else that was maybe possibly available at that time and not pursued, but that is hindsight. That is not the test. As such, it is not a question as to whether Mr. Downes could have done a better job or whether he could have been perfect in his representation of the defendant. The question is as under Strickland whether his performance fell below the objective standard of reasonableness, and I do not find that it did.

Mr. Downes did interview witnesses. He did the research. He did the review of the file. He was prepared and did ably represent Mr. Coffin.

With regards to the phone records, I would concur with Mr. Baker that, in essence, it would not have made a difference even if Mr. Downes would have been able to obtain, or I should say the family or the combination of the two, those phone records. As pointed out by Mr. Baker, and I appreciate his honesty in that regards, even the phone records themselves would not necessarily establish the minute for minute time frame because we don't know so far as the comparison with any clock at the location of the robbery versus the phone records. And all things considering, it just would not have made the difference as such that would indicate Mr. Downes

19

was ineffective or that there would be a different result if those phone records would have been found and produced at trial.

With regards to the failure to present defense witnesses, I am there also satisfied with Mr. Downes' explanation so far as the character or family or other witnesses that Mr. Coffin wished to present now as we discuss this motion today. I do note in passing when I go back to that motion I previously mentioned filed by Mr. Coffin on his own whereby he was asking to dismiss counsel, in that motion he indicated on page two, paragraph five, that he has an alibi witness, Nicki Stanton that can place defendant with her at another location at the time of the alleged offense. He does not identify in that motion this person that has been identified here today. It does sound like it was discussed with Mr. Downes, but it also sounds like it never went anywhere from what has been said here today. I mention Ms. Stanton in passing in that that was the only witness identified by defendant to this court on January 30, 2008. And also in conjunction with his conversation with appellate counsel that it would not work to have her as an appellate, excuse me as an alibi witness in that she was apparently driving the getaway car. It does raise questions of interest as a side note as to whether she was also involved in this and then also by that her boyfriend, Mr. Fountain as to what role he may or may not have played in this armed robbery, but it does not exculpate the defendant. It certainly does not provide an alibi if she's involved in the armed robbery as apparently he told his appellate attorney.

Anyway, I can certainly see why as trial strategy she was not called as a witness. I am then also satisfied by all of this that Mr. Baker was not ineffective, especially based on what the defendant told him. By that, it essentially became a non-issue. According to his testimony, and I have no reason to disagree since it's supported by the pleadings that Mr. Coffin has himself filed, this witness identified today, even though apparently it was discussed with Mr. Downes, was not really an issue so far as the discussion between Mr. Coffin and Mr. Baker.

Once again, trial strategy is not ineffective assistance of counsel. I would concur with Mr. Downes' evaluation and the same is true in so many trials. Even though family and friends are willing to testify and sometimes can be appropriate character witnesses or otherwise assist the defense, there is with that also a risk. My memory of this trial is as argued or submitted here today by trial and appellate counsel that there were legitimate issues so far as identification. And by that, much is involved so far as trial strategy as to what you do or do not do that may change the issues of trial or may diffuse the legitimate arguments that you do have.

With regards to the money not marked, that again falls within the argument as indicated by Mr. Baker that in retrospect Mr. Downes could have said more, could have done a better job, but that again is not ineffective assistance of counsel.

With regards to the money found on the defendant, I again would concur with Mr. Baker that it was not a viable issue. It is one that could have been raised but in all probability, and the court does so find, would have resulted in the same ultimate eventual allowing of that testimony or evidence in at trial. That again is trial strategy. Just because a different trial attorney may have filed every motion under the sun, it doesn't mean that Mr. Downes' determination not to do so was ineffective. It's all part of trial strategy as to how you prepare for trial and what you want done, what you don't want to tip off to the prosecutor, and what you want to have a trial issue instead of doing anything that would tip off the prosecutor as to what you're going to argue or questions you're going to ask, how you are going to conduct the trial.

With regards to victim bias, I would concur also with counsel that asking more or doing more there was not ineffective assistance of counsel. There's also risk there with what you do by trying to establish some type of victim bias, you also run the risk of supporting the argument that the person is able to identify the defendant because of the relationship that they have had. It's also risky what you do, what you don't do, but again, it is trial strategy.

The motion to adjourn, I don't see that as being an issue. Mr. Downes indicated that he was prepared for trial. He did conduct the trial in a satisfactory, if not better than satisfactory manner. It simply is as such hat the jury came back with a guilty verdict. And although he may have the same misgivings that Mr. Baker did, the jury did make its determination based on legally admissible evidence. There has not been anything proven to this court that it was based on inadmissible evidence or evidence as such that would justify a new trial, or even that there is new evidence out there Mr. Downes could have or should have found and did not.

I'm sorry it is simply more than anything else a motion as such that it's not there that I was convicted, and as such by that, the shotgun approach of throwing everything out by that it must have been ineffective because Mr. Downes did not cross all the t's or dot all of the I's. But it is this court's determination that he did so. He adequately represented Mr. Coffin. The result is not as wished by Mr. Coffin or I assume by trial counsel or as with the misgivings that Mr. Baker has, but it was a fair trial. It was based on the legally admissible evidence. Both parties were adequately represented by trial counsel, and by that there's simply just not a basis to grant a motion for relief from judgment under Strickland or the Michigan cases.

So with that, the Court is going to deny the motion.  .  .

Motion Trans. (docket no. 21, pp.  90-99); Order (docket no.  26, p.  2).

In the present habeas action, petitioner contends appellate counsel was ineffective

because he "only raised one issue, a sentencing issue, even though I expressed I wanted these issues

21

raised." Amend.  Petition (docket no.  6, PageID.132).  Petitioner cites to a letter from his appellate counsel regarding the seven issues petitioner wished to raise on appeal.  *See* Letter (Dec. 29, 2008) (docket no. 1-3, PageID.109-110).  In this letter, appellate counsel addressed each of plaintiff's concerns:

> You will note that I did not raise most of the issues we discussed when we met last month.  Let me assure you that I carefully considered each of them, along with a few others, before very reluctantly deciding they lacked arguable merit.
>
> What follows is a brief discussion of my reasons for not raising certain issues.  If you want a more detailed account let me know.
>
> (i) Ineffective Assistance (IAC)--conflict of interest.  The fact that defense counsel once represented prosecution witnesses is not by itself enough to warrant retrial.  An appellant must also show that the conflict actually impaired counsel's performance.  See, for example, *Dixson v.  Quarles*, 780 F2d 534 (6th Cir. 1985) (defense counsel was victim's lawyer at time of her murder, allegedly by defendant; held, no evidence of conflict that would require retrial).
>
> (ii) IAC--unprepared for trial.  As I told you when we met, counsel's admission that he did not really consult with you about the case until six days before trial does not establish ineffective assistance.  We'd have to give concrete examples of his unpreparedness.  See *Dick v.  Scroggy*, 882 F2d 192 (6th Cir.  1989) (even though counsel only consulted with client for 30-45 minutes the night before trial, no presumption of ineffectiveness, and ineffectiveness not shown in record).
>
> (ii) [*sic*] IAC--failure to establish proper foundation for your sister's phone records.  Even assuming that such a foundation could have been laid, any error was harmless.  The jury heard your sister's testimony about the phone call and phone records.  Given the other evidence in the case, the difference between just presenting testimony about the call and records and also admitting the records in evidence were not, even arguably, the difference between conviction and acquittal.
>
> (iii) IAC--failure to present certain defense witnesses.  I spoke to Walker Downes, and he told me he spoke to the witnesses in question and gave me strategic reasons for not calling them.  He was concerned that the accounts of the other witnesses (your mom and Billy Andrews) about where you got the money didn't jibe, and that they'd do more harm than good.  He decided the Michigan Works witness (Cherika McKinney) just didn't know you well enough to be a good character witness, and that in any event calling a character witness would have been a too risky strategy because it would have opened the door to bad-character evidence.

(iv) IAC--failure to emphasize that the $100 bills in your pocket were not "marked." Given Moriah Farrar's testimony that the $100 bills in the till would have been marked with a "counterfeit pen," and given the prosecutor's failure to show that the bills in your pocket were marked, it occurred to me that your lawyer could have done a better job highlighting the lack of evidence. However, he did raise the issue ("This wasn't marked money," II 162), and courts will not reverse simply because obvious summation arguments could have been clearer or better. In fact, the Michigan Court of Appeals recently rejected an IAC claim where counsel altogether neglected to mention appellant's self-defense claim; the Court held that the presence of a self-defense jury instruction was adequate to bring the issue to the jury's attention. *People v. Binienda*, unpublished opinion per curiam, dated 1-24-08 (No. 273485).

(v) IAC--failure to move to suppress money found in your pocket. Assuming (as Deputy White seemed to do) that the police lacked probable cause to arrest you when they first arrived at the apartment complex, but did have reasonable suspicion to detain and question you briefly, Deputy White could properly pat you down for weapons. However, he could not then simply seize anything he felt in your pockets, only objects that were immediately recognizable as weapons or contraband. *Minnesota v. Dickerson*, 508 U.S. 366 (1993). The "paper" he said he felt was clearly not a weapon. Arguably, it became contraband (evidence of a crime) when you told him it was money. But, did his question ("What is it?") violate *Miranda*'s ban on unwarned custodial interrogation? This is an interesting fact pattern, but the bottom line is that they were going to find the money after they executed the search warrant, got their probable cause, and arrested you. Also, they didn't need the money-in-pocket allegation to get the search warrant (the other allegations were enough), and therefore a challenge to the legality of the warrant would have fallen flat.

(vi) Judge's error--refusal to admit phone records. The judge has a lot of leeway in deciding whether or not to admit evidence, and he was right in thinking that a business-records foundation had not been laid. See MRE 803(6).

If after reading the above you still think that I should have raised other issues, you have the right to file your own supplemental brief. I will provided [*sic*] whatever clerical or procedural help you need (for example, typing, copying, filing). The Court's deadline for such a brief is 84 days.

*Id*.

After reviewing the record, the Court concludes that petitioner's claim of IAAC fails because he has not demonstrated that appellate counsel made an objectively unreasonable decision by choosing to raise the sentencing issue rather than the seven issues addressed in appellate counsel's letter. As explained by both the trial court and appellate counsel, the issues proposed by petitioner

were not "clearly stronger than [the] issue[] that counsel did present." *Moore*, 708 F.3d at 776.  As discussed, appellate counsel met with petitioner, researched the possible issues to appeal, met with other appellate attorneys, and sent petitioner a letter explaining strategic reasons for not raising the issues requested by petitioner.  Appellate counsel filed a brief with the Michigan Court of Appeals challenging the trial court's imposition of a consecutive sentence.  The Michigan Court of Appeals agreed with appellate counsel, determined that the trial court sentenced petitioner improperly, and remanded the case for resentencing.  *Id*.  at *1.  Petitioner has not demonstrated that appellate counsel's decision to raise only the sentencing issue on appeal was anything other than appellate strategy, a strategy  which was validated when the Michigan Court of Appeals remanded the case on the ground raised by counsel.  Therefore, appellate counsel's performance was not deficient.

Furthermore, petitioner suffered no prejudice because he could have raised these additional claims in a separate appellate brief.  Michigan Supreme Court Administrative Order No. 2004-6 ("Minimum Standards for Indigent Criminal Appellate Defense Services") provides a mechanism for criminal defendants to raise issues in their direct appeal which appellate counsel finds inadvisable.  Under Michigan Supreme Court Administrative Order No.  2004-6, Standard 4:

> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court.

Both the Michigan Court of Appeals and the Michigan Supreme Court address the issues raised by defendants in their Standard 4 briefs.  *See e.g., People v.  Moore*, 493 Mich. 933, 825 N.W.2d 580 (2013) (remanding the case to the Court of Appeals to reconsider the issues raised in defendant's Standard 4 brief); *People v. Walker*, No. 322133, 2016 WL 97898 at *5 (Mich. App.

24

Jan. 7, 2016) (addressing several issues raised in defendant's Standard 4 brief and supplemental standard 4 brief filed with the Court of Appeals). In this regard, the Michigan Court of Appeals has determined that when a defendant raises an issue in a Standard 4 brief, this cures "any possible error committed by his appellate counsel" in failing to raise the issue before the appellate court. *See People v. Lopez*, 305 Mich. App. 686, 694, 854 N.W.2d 205 (2014) ("to the extent that defendant argues that appellate counsel should have raised the issue of trial counsel being ineffective, because defendant raises this issue in his Standard 4 brief, any possible error committed by his appellate counsel was cured"). Federal courts have agreed that a Michigan criminal defendant is not prejudiced by appellate counsel's failure to raise a claim on direct appeal, when the defendant files a Standard 4 brief which could have raised those claims. *See Tighe v. Berghuis*, No. 1:12-cv-1314, 2016 WL 5537287 at * 4 (W.D. Mich. Sept. 30, 2016) (where petitioner's appellate counsel filed a brief and petitioner filed a Standard 4 brief raising additional issues, petitioner "had the opportunity to bring any claims he desired on direct appeal" and "therefore cannot show prejudice from appellate counsel's failure to raise particular issues on direct appeal"); *Rice v. Olson*, No. 2:13-Cv-10060, 2016 WL 74856 at *8 (E.D. Mich. Jan. 7, 2016), *cert. of appealability denied*, No. 16-1125, 2016 WL 3877866 (6th Cir. July 15, 2016) ("Because the Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental *pro per* brief, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel."); *Clark v. MacLaren*, No. 2:10-cv-10748, 2013 WL 147626 at *7 (E.D. Mich. Jan. 14, 2013) (same). *See also, Donaldson v. Booker*, 505 Fed. Appx. 488, 496 (6th Cir. 2012) (habeas petitioner was not denied effective assistance of counsel due to appellate counsel's failure to investigate and obtain physical evidence regarding timing of armed robbery for which he was

25

convicted, where appellate counsel would have been limited to record on appeal, and her only recourse would have been to raise issue as claim of ineffective assistance of trial counsel, and petitioner presented that claim in his *pro se* supplemental brief).

While petitioner in this case did not file a Standard 4 brief, he not only had an opportunity to file such a brief, but his appellate counsel invited him to do so and, consistent with Standard 4, advised petitioner of the deadline for filing such a brief and offered to provide "whatever clerical or procedural help you need (for example, typing, copying, filing)." *See* Letter (Dec. 29, 2008)(docket no. 1-3, PageID.109-110). However, petitioner chose not to raise these issues in his direct appeal by filing a Standard 4 brief. Rather, petitioner waited until the direct appeal was over, and raised these claims in a post-conviction motion for relief from judgment, claiming that his appellate counsel was ineffective for failing to raise additional issues. *See* Motion for relief from judgment. In this instance, petitioner was not prejudiced by appellate counsel's failure to raise additional issues in the appellate brief, because he could have presented these issues to the Michigan Court of Appeals in a Standard 4 brief like the defendants in *Tighe*, *Rice* and *Clark*. Accordingly, petitioner's claim of IAAC should be denied.

### V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: January 31, 2017                  /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).